12507

LORICK & LOWRANCE v. JULIUS H. WALKER & CO.

(145 S. E., 33)

January, 1927.

*Messrs. Melton & Belser,* for appellants,

*Mr. Edward L. Craig,* for respondents,

October 4, 1928.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action upon an account for goods sold and delivered—a lot of lime to be used by the defendants in the construction of brick veneer work upon a dwelling house in course of construction—amounting to $1,346.06. The defendants admitted the sale, delivery, and price of the lime, but set up a counterclaim for $1,297.00, damages alleged to have been sustained in having to tear down much of the veneer work on account of the worthlessness of the lime. The issue was sharply drawn between the parties whether the failure of the mortar to function properly was due to the defective character of the lime, or to the failure of the defendants to dampen the bricks before using them in the work.

The case came on for trial before his Honor, Judge Whaley, in the County Court of Richland County, in January, 1927, and resulted in a verdict for the plaintiffs for the full amount of the account. The defendants have ap-

pealed upon several exceptions, the only ones of which we deem it necessary to consider being the second and third, which are as follows:

"2. Because the Court erred in remarking with reference to the testimony of the defendant's witness Mr. Julius H. Walker: 'The Court: He doesn't know that, he was informed that.' It being respectfully submitted that such remark on the part of the Court was improper and confusing, as tending to transgress the constitutional functions of the jury to pass on the facts.

"3. Because the Court erred in making the following remark in reference to the testimony of the defendant's witness Mr. Julius H. Walker:

" 'The Court: Were you there when these bricks were laid? I am afraid you are telling a whole lot of hearsay about when some of them were laid.

" 'Witness: I was there when 80 per cent. of them were laid. I can testify that the 80 per cent. that were laid when I got back were laid when damp. I was not on the job every minute of every day.

" 'The Court: That is the reason you have to be careful about testifying.'

"It being respectfully submitted that such remark on the part of the Court was improper and confusing, as tending to transgress the constitutional functions of the jury to pass on the facts, and such remarks are highly prejudicial to the defendant's case."

During the direct examination of one of the defendants, Julius H. Walker, a principal witness for the defendants, as his testimony shows counsel for the defendants evidently sought to show that the defective character of the lime was due to the fact that the lime had been delivered in plaster sacks, and this occurred (questions by Mr. Belser to the witness Walker):

"Q. Did you make investigation to find out as to whether lime was in these plaster sacks? A. I asked my truck driver;

he told me he had gotten the lime from Lorick & Lowrance. The lime that we had used had come in plaster sacks.

"The Court: He doesn't know that. He was informed that.

"Q. Did you find some of the lime there? A. I found some of the lime, and I had an analysis made out of it, out of the plaster sacks. * * *

"Q. The lime was in the sack? A. Yes, sir.

"Q. Just as you found it? A. Just as I found it."

The answer of the witness, detailing a conversation with the truck driver, was, of course, hearsay and subject to the criticism of the presiding Judge; but manifestly the statement, "The lime that we had used had come in plaster sacks," was not made as coming from any one, as is shown by what followed. The presiding Judge should have pointed out the objectionable statement, and not reflected upon the whole of the witness' testimony upon the point.

On the redirect examination of the same witness, this occurred:

"Q. Mr. Walker, Mr. Smith had something to say about the heat causing this mortar not to set up; what about that? A. Only in the hottest part of the summer is it necessary to dampen the brick, but we dampen the brick almost all the time except in extremely cold weather. The bricks were dampened on the job before we laid them; they were dampened with the hose before we laid them.

"The Court: Were you there when those bricks were laid? I am afraid you are telling a whole lot of hearsay about when some of them were laid.

"Witness: I was here when 80 per cent. of them were laid. I can testify that the 80 per cent. that were laid when I got back were laid when damp. I was not on the job every minute of every day.

"The Court: That is the reason you have to be careful about testifying."

This testimony, as above indicated, was upon the main issue between the parties, whether the bricks had been dampened. The witness was not attempting to give hearsay testimony, but apparently was speaking from his personal knowledge. The remarks were calculated to impress the jury with the fact that the witness, in endeavoring to win his case, was giving the character of testimony against which he had been already warned by the Judge, and was clearly prejudicial.

After the presiding Judge had had his attention called to the possible reflection upon the testimony of Mr. Walker, this occurred in open Court:

"Gentlemen: It has been brought to my attention here that in my ruling some of my remarks may have cast some reflection on Mr. Walker or his testimony, or both, and I think I had better clarify it. I said something to the effect that I feared his testimony had a great deal of hearsay evidence in it.

"Gentlemen, there are certain fundamental rules of evidence. It makes no difference to me whether the attorneys, one or both of them, try to follow them or not; I try to follow them as a Judge, because it is my duty. So what I said was looking plumb over the individual who was up here and at the case I was trying and at the issues that were in it in the light of those rules. What I meant is that Mr. Walker, unintentionally, because he was a layman and didn't know the rules of evidence, gave some testimony which was founded upon hearsay and not what Mr. Walker knew himself. As to casting reflection on his testimony or the weight of his testimony, it is as far from me as anything in the world could be. I have no right to do that. These are rules that have to apply. I have to stick to them regardless of whether he approves of it or not."

We do not think that the remarks of his Honor corrected the error into which he had fallen; it was a reiteration of the charge that Mr. Walker had given hearsay testimony

without pointing out particularly wherein he had offended, and necessarily leaving the jury with an exceedingly unfavorable impression of his testimony generally.

In *Powers v. Rawls,* 119 S. C., 148; 112 S. E., 83, the Court says:

"It is sufficient for our purposes to observe that, not only must the formal charge to the jury be kept free from any statement of facts in issue or expression as to the weight and sufficiency of evidence *(Norris v. Clinkscales, supra* [47 S. C., 488; 25 S. E., 797]. *Burnett v. Crawford,* 50 S. C., 161; 27 S. E., 645 \* \* \* ), but it has been frequently held that a trial Judge should not by the interrogation of witnesses, by remarks in ruling upon evidence offered, or by comment upon the facts in relation to interlocutory motions, indicate opinions or express views reasonably calculated to influence the jury in deciding a material issue of fact." *Willis v. Tel. Co.,* 73 S. C., 379; 53 S. E., 639. *Latimer v. Electric Co.,* 81 S. C., 379; 62 S. E., 438. *State v. Driggers,* 84 S. C., 526; 66 S. E., 1042; 137 Am. St. Rep., 855; 19 Ann. Cas., 1166. *State v. Jackson,* 87 S. C., 410; 69 S. E., 883. *Stokes v. Murray,* 99 S. C., 221; 83 S. E., 33. *Enlee v. Seaboard Air Line Railway,* 110 S. C., 137; 96 S. E., 490.

The judgment of this Court is that the judgment of the County Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.