13701

JOHN T. STANLEY CO., INC., v. KAUFMAN *ET AL.*

(171 S. E., 32)

522

*Mr. Wilton H. Earle,* for appellant,

*Messrs. Price & Poag* and *W. A. Bull,* for respondents,

October 11, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

As plaintiff, John T. Stanley Company, Inc., commenced this action against the defendants, Bernard Kaufman and Annie Kaufman, individually, and as partners doing business as Kaufman Bros., in the Court of Common Pleas for Greenville County May 14, 1931, for the recovery of judgment in the sum of $3,994.16, based on the allegation that the plaintiff sold and delivered to the defendants goods and merchandise for that price, alleging that sum to be due thereon, after allowing all credits. In their answer the defendants interposed a general denial and also set up a counterclaim alleging that the defendants were, and had been, engaged in operating an automobile accessory business in the City of Greenville, which operations, according to defendants' allegations, extended throughout Greenville County and the surrounding towns and counties for a distance of approximately 125 miles; further, that the plaintiff and defendants were parties to a contract, under the terms of which the defendants were the exclusive agents of the plaintiff in the City of Greenville and the said surrounding territory, for the "sale of glycerine and anti-freeze"; that, after the execution of the said contract, the "plaintiff, in disregard of its agreement, and in fraud of defendants' rights, shipped to one of defendants' competitors the same merchandise, which plaintiff was selling defendants, in defendants' exclusive territory," and that thereby the defendants were damaged in the sum of $5,000.00 actual damages and $5,000.00 punitive damages. In its reply to the answer and counterclaim of the defendants the plaintiff denied the facts alleged therein.

The case was tried at the October, 1932, term of said Court before his Honor, Judge M. M. Mann, and a jury. At the trial of the case the defendants relied upon the counterclaim, admitting the allegations of the plaintiff as set forth in the complaint. At the close of the introduction of

the testimony, a motion of the plaintiff for direction of a verdict for the plaintiff being refused, the case was submitted to the jury, and a verdict returned for the plaintiff against the defendants in the sum of $3,994.16, and in favor of the defendants against the plaintiff in the sum of $2,-515.16, leaving a net balance in favor of the plaintiff of $1,479.00. As we understand the record, the amount the jury found for the defendants against the plaintiff was actual damages, and no punitive damages were found against the plaintiff. From judgment entered on the verdict in favor of the defendants the plaintiff has appealed to this Court and asks a reversal of said judgment upon exceptions presented.

In the appeal quite a number of exceptions are presented, but, for the benefit of the Court, appellant's counsel states in his brief that the questions for determination are that "the presiding Judge erred (1) in refusing to direct a verdict in favor of appellant on respondents' counterclaim, (a) actual damages and (b) punitive damages; and (2) also, the admission in evidence of testimony in contravention of the parol evidence rule, and that certain letters should have been excluded as prior negotiations to a written contract."

As to the contention of appellant that the trial Judge erred in submitting to the jury the issue of punitive damages, that question goes out of the case, for the reason that the verdict of the jury did not include punitive damages. We consider it unnecessary to cite authority in support of this position. However, we call attention to the case of *Thompson v. Thompson*, 141 S. C., 56, 139 S. E., 182.

The other questions we shall consider together.

We are unable to agree with appellant in the position that the trial Judge erred in refusing to grant the motion for direction of a verdict on defendants' counterclaim as to the actual damages. As we understand the position of appellant regarding this phase of the case, it is appellant's contention, in the main, that, the testimony bearing on the defendants' counterclaim being incompetent, there was no evidence up-

on which to base a verdict for the defendants on the claim, not only as to punitive damages but as to actual damages as well; the testimony admitted in evidence, over the objection of the plaintiff, to which our attention is called, being according to appellant's contention, in contravention of the parol evidence rule. It is also contended, as above stated, that certain letters were admitted in evidence which should have been excluded as prior negotiations to a written contract. It is thus seen that the question appearing at the threshold of the principal issue is the competency of the testimony.

It is true, under the general and well-recognized rule, a written agreement between two persons merges all prior talk and negotiations about the subject of the agreement, and it is not proper to receive testimony to vary or contradict the terms of such agreement; but it is also a well-recognized rule that, if the meaning of such agreement, or any material provision of the same, is not clear, then it is proper to admit testimony for the purpose of making clear such meaning. Further, it is proper to admit testimony in proof of a contemporaneous or independent agreement on the same subject-matter, the meaning of which is not at variance with the principal agreement. Especially is this true when the purpose of such contemporaneous or independent agreement was to induce the execution of and entering into the principal agreement. That is the condition we have in the case at bar.

It appears from the record in the case that, pursuant to a written agreement of the parties, the plaintiff sold and delivered to the defendants the merchandise in controversy. It further appears that the defendants did not sign this agreement on the date that the said paper bears, or was received, but signed the same on some later date; that, before the defendants signed this contract, there was some correspondence between the parties as to the plaintiff making the defendants its exclusive representative for han-

dling the said merchandise in Greenville and vicinity, and further that the defendants were induced to sign the same by the plaintiff's promise to give unto the defendants the exclusive handling of said merchandise in the said City of Greenville and vicinity. Upon this promise being made to the defendants by the plaintiff, the defendants returned the sales contract to the plaintiff with their acceptance thereto, which they had been holding for some time. It also appears that one or more of the plaintiff's representatives called on the defendants during this negotiation which led up to the defendants signing the said sales contract. As we understand the case, it was the introduction of this correspondence in evidence that the plaintiff objected to, as well as statements made by the plaintiff's representatives during that time. Under the rules stated above, we think this testimony was competent for the purpose of establishing the alleged agreement between the parties which, according to the defendants' contention, induced the defendants to sign the acceptance to the said sales contract in question, and accept the said merchandise to be handled for the plaintiff by the defendants in said territory.

As to the position of appellant that the parties (other than the defendants), to whom the plaintiff is alleged to have sold the merchandise in question were not jobbers, we regard it sufficient to state that, in our opinion, that question, under the surrounding circumstances, was an issue for the jury, and whether such alleged violation of the alleged agreement to give unto the defendants the exclusive right to handle the said merchandise in Greenville and vicinity, resulted in damages, which should have been within the contemplation of the parties, was also a question for the jury.

In this connection we call attention to the fact that the sales contract in question does not state whether the defendants are to have the exclusive agency to handle the said merchandise in the said territory or not, and the above-mentioned letters were competent to clarify the

situation, making it clear that it was the intention of the plaintiff to give to the defendants an exclusive agency at the place mentioned. From a letter, addressed to the defendants, as late as January 20, 1931, an inference may be drawn that it was the intention of the parties that the defendants were to have the exclusive agency in the City of Greenville and vicinity for the handling of the said material. Mr. Kaufman, in referring to the fact that he had been handling this merchandise for some time for the plaintiff, stated, in effect, in his testimony on the trial that he had exclusive agency in handling the same prior to the period of time covering the contract in question, and further stated that he signed the sales contract involved in this suit on the strength of the promise of the plaintiff to give the defendants the exclusive agency in the said territory. In this connection, we may state, further, that, for the purpose of enabling the Court and the jury to understand the surrounding circumstances and what influenced the minds of the parties at the time the sales contract in question was entered into, it was, in our opinion, competent to admit in evidence the contracts between the parties governing the sale of said merchandise by the defendants in the same territory during the years immediately preceding the period of time involved in this suit, and for the same purpose it was also competent to receive in evidence the testimony of the witnesses regarding the approximate distance which the defendants covered in handling the said merchandise during that period of time.

It seems to be the contention of appellant that under no view of the case is there any proof that the defendants had the exclusive right to handle the said merchandise except in the City of Greenville. As stated above, in one of plaintiff's letters to the defendants, reference is made to the question of territory, and from which letter the inference may be drawn that it was the intention of the plaintiff to allow the defendants the exclusive right to handle the said merchandise in the City of Greenville and

528

vicinity. The term "and vicinity" is a relative term, and, in the absence of a statement in the written instrument, describing or explaining its intentional use therein, parol testimony, in our opinion, should be received for the purpose of explaining the sense and purpose in which the parties involved used it at the time in question. In his testimony Mr. Kaufman stated, in effect, that, in conducting the sales of the said merchandise for the plaintiff for the years immediately preceding the time involved in the sales contract in question, he sold the same in Greenville and towns around that city, and made the following statement in answer to a question propounded to him: "Q. All right, what was your territory that you covered around in selling? A. Going from Greenville to Easley, Pickens, Liberty, Seneca, Walhalla, Westminster, and go to Greenwood and Anderson."

Of course, the Court must take some notice of the distance between the towns above mentioned, and if, under the sales contracts in force between the parties prior to the contract involved in this case, the defendants covered this territory in selling plaintiff's goods, with the knowledge of the plaintiff, the interence might reasonably be drawn from such fact that the defendants had the right to cover the same territory in selling and placing the said merchandise under the contract involved in the case at bar, especially in the absence of instructions to the contrary or an agreement to the contrary. It is our opinion that the plaintiff's objection to the statement of the witness, Kaufman, that the defendants' agency covered a distance of 125 miles is not well founded. We think that this testimony, under surrounding circumstances, was competent; for the distance from Greenville to the several towns mentioned above involves a greater distance than 125 miles.

We are unable to agree with appellant's further contention that the proof in the case shows that the damages involved were speculative and uncertain and that it was error to submit the case to the jury and to leave it to

the jury to fix the amount of damages sustained by the defendants. It is true that the damages sustained in such a case can seldom be determined to a mathematical certainty, and therefore, of necessity, such questions must be trusted to the good common sense and honesty of the jurors in the case, keeping in mind, of course, all the evidence adduced at the trial and the surrounding circumstances involved therein. We call attention to the fact, however, that the jurors in this case were not left wholly "at sea" in arriving at a verdict and fixing the amount of damages, for there was considerable testimony bearing on this question. There was testimony tending to show that the parties (other than the defendants), to whom the plaintiff shipped and delivered the goods in question sold the same over the defendants' alleged territory and interfered greatly with the defendants' sale agents in selling and placing the said merchandise; that the agents of the other parties mentioned sold the said merchandise at a price below the price for which the defendants were permitted under their agreement with the plaintiff to sell the same, and that this greatly interfered with the defendants' said business; also that it was necessary for the defendants to return to a large number of their customers the difference in the amount for which the defendants sold the said goods and the price at which the salesmen of the other said parties were selling the same; that, on account of the dissatisfaction caused as aforesaid among the defendants' customers, the defendants' sales were greatly reduced, and because of this the defendants had left on their hands a large amount of the goods purchased from the plaintiff under the said sales contract, and it was with difficulty and considerable expense and loss that the defendants were finally enabled to dispose of the same. There was further testimony which tended to show that the customers of the defendants, by reason of the aforesaid acts, became greatly dissatisfied with the defendants and lost confidence in them, and that by reason of this defendants sustained a further great loss in their

business. Mr. Kaufman, speaking for the defendants, in his testimony estimated the loss to the defendants in the sum of $10,000.00. This estimation, it appears, was based upon all of the circumstances and facts in the case to which attention has been called above. In this connection we may add that we do not think the trial Judge erred in allowing Mr. Kaufman's testimony to be admitted in evidence on this line. As we have suggested, it appears that Mr. Kaufman's estimate was based on all of the facts in the case to which attention has been called.

In support of the views expressed herein, we call attention to the case of *Virginia-Carolina Chemical Company v. Moore & Hughes,* 61 S. C., 166, 39 S. E., 346, and the case of *Empire Buggy Company v. Moss,* 154 S. C., 424, 151 S. E., 788, and authorities therein cited.

While we have not discussed herein every question referred to in the briefs of counsel for the parties before the Court, we have duly considered the same, and, after considering the entire record in the case, it is our opinion that the trial Judge committed no prejudicial error, and that the parties to the cause received a fair and impartial trial. In this connection we call attention to the fact that no error is imputed to the trial Judge regarding his Honor's charge to the jury.

The exceptions are overruled, and the judgment of the lower Court is affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Bonham concur.