**RICHEN-GEMCO, INC., Appellant,**

v.

**HELTRA, INC., Appellee.**

No. 75–2174.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1976.

Decided Sept. 3, 1976.

---

James W. Geriak, Robert M. Taylor, Jr., Lyon & Lyon, Los Angeles, Cal., for appellant.

Ralph Bailey, Leo H. Hill, Greenville, S. C., for appellee.

Before BUTZNER, and RUSSELL, Circuit Judges, and MARKEY, Chief Judge,

United States Court of Customs and Patent Appeals.*

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.

This is an appeal from a judgment of the district court holding appellant (Richen) liable for payments on a contract with appellee (Heltra). We reverse and remand.

## Background

George Tradewell, an officer of Heltra, developed an apparatus for shrinking and bulking thermoplastic yarn for which he filed on March 24, 1967, an application for letters patent which was assigned to Heltra. In batch processes loose skeins of yarn had been heat treated in an autoclave. The application disclosed apparatus intended to employ a continuous process wherein yarn was continually fed through a coiled heated conduit. To transport the yarn centrally within the heated conduit and out of contact with the inside walls thereof, Tradewell suggested a gaseous medium (e. g., air) flowing in a particular manner. The flow characteristic of the gaseous medium was described in the patent application as "laminar flow to prevent substantial turbulence within the conduit."

The broadest claim of the patent application [1] described the entire apparatus as follows:

1. In apparatus for processing yarn comprising yarn feed means, including a positive feed device, yarn takeup means to take up yarn at a predetermined rate, heater means intermediate said feed and takeup means to heat the yarn to a predetermined temperature, and means intermediate said heater and said takeup to afford cooling of said yarn, the rate of feed of said feed means being correlated to the predetermined rate and the shrinkage of said yarn in said heater means to maintain the yarn in said heater means in a substantially tensionless state, *the improvement wherein* said heater means

comprises a tubular conduit receiving said yarn, said conduit being disposed in a plurality of convolutions, and means to inject gaseous medium into said conduit adjacent the inlet thereof *to cause said air to flow through said conduit concurrent with said yarn with laminar flow devoid of turbulence to thereby position said yarn centrally in said conduit during its travel through the convolutions out of contact with the side walls of said conduit,* and means to heat said convolutions of the conduit to thereby impart radiant heat to said yarn traveling therethrough. [Our emphasis.]

After the patent application was filed, but before the Patent Office took any action thereon, negotiations began with Relset, Richen's predecessor in interest. An agreement was reached and on March 22, 1968, the parties executed a contractual document setting out its terms.

## The Contract

After identifying the parties, their purpose in contracting, and the patent application, the contract provided that Heltra would transfer to Relset all of its interest in the patent application as well as all drawings, tooling, and an experimental machine. Relset agreed to pay Heltra $25,000 in three installments and to pay a "royalty," the crux of the dispute here, in accordance with this contract provision:

As the balance of the consideration for said sale, Relset agrees to pay to Heltra by way of royalty the following sums upon the following basis and conditions, to-wit:

(a) A sum representing Five (5%) per centum of the NET SALES of Purchaser during the next ensuing Seventeen (17) year period, calculated from July 1, 1968;

(b) The term "NET SALES" as used herein shall mean Purchaser's gross cash receipts actually received during

---

* Sitting by designation.

1. Claims 2–8 depend upon and further define the subject matter of claim 1. Claims 9–14

recite structural elements to cool and to collect the treated yarn.

any one fiscal year for sale of only such of its products as incorporate or make use of said yarn processing apparatus (as covered by said patent application), *less* trade, quantity or cash discounts and broker's or agent's commissions, *less* credits or allowances, if any, made on account of rejection or return of such products previously delivered, and *less* transportation charges, if any * * *. [Original emphasis.]

Other provisions of the contract included a covenant not to compete, a covenant not to disclose confidential information (together with sanctions for disclosure), and an agreement that South Carolina law would apply to any contract interpretation. Finally, the last paragraph of the document contained the following:

It is expressly understood that this Agreement contains the complete understanding of the parties hereto, and no alterations or modifications of this Agreement shall be effectual and binding unless in writing and signed by both parties hereto.

### Post-Contract Developments

Except for payment of the royalty, both parties performed their respective duties and obligations under the contract.

The Tradewell patent application matured into United States Patent No. 3,408,-716, containing claims identical to those present in the application at the time the contract was made.

Richen, considering the Tradewell-designed machine impractical, itself developed an apparatus wherein the yarn is said to be conveyed through the conduit along a wall thereof by air having highly turbulent flow characteristics. Richen believed its apparatus to be outside the subject matter of the contract, (1) because the yarn was not conveyed by "laminar flow devoid of turbulence," was not positioned "centrally in said conduit," and was not "out of contact with the sidewalls of said conduit," as required by claims 1–8; and (2) because its apparatus did not employ the cooling and collecting means of claims 9–14. Accordingly, Richen

refused to pay the contract royalty and Heltra filed suit to recover that royalty.

### Proceedings Below

After a trial without a jury, the district court made findings of fact and conclusions of law. The two critical findings were:

11. That it was the intent of the parties that the payment of the amounts specified in the agreement were to continue * * * so long as the purchaser or its assigns continued to sell a yarn processing machine which utilized the basic concepts and apparatus sold them by the plaintiff.

12. That while defendant and its predecessors in interest have made certain improvements in the yarn processing apparatus purchased from plaintiff and covered by the patent application purchased at the same time, the Richen yarn processing machines marketed by the defendant to date do fall within the provisions of the sales agreement under consideration.

Viewing the contract's failure to provide for the effect of the issuance or denial of a patent as an ambiguity, the court considered parol evidence to ascertain the intent of the parties. The court concluded that royalty payments were intended "so long as the *basic concept* of the yarn processing apparatus purchased was used * * *" [Our emphasis.] and that Richen may not escape payment of the royalty under the agreement because:

As noted above (see Finding of Fact No. 12) the evidence clearly establishes that the yarn processing machines marketed by the defendant during the period in question are substantially similar to the prototype machine purchased from the plaintiff. While it is true that the defendant [Richen] and its predecessors in interest made changes in certain aspects of the yarn processing apparatus (i. e. intake and exit nozzles were redesigned and a different source of heat was employed for the purpose of heating the yarn), it nevertheless appears from the testimony that the defendant *continues*

*to utilize essentially the same apparatus and to employ basically the same concept* as found in the yarn processing unit purchased from the plaintiff [Heltra]. [Our emphasis.]

## OPINION

### Parol Evidence

■ It was error to consider parol evidence and to find therefrom an intent of the parties different from that expressed in the contract. The general rule in South Carolina, as in other jurisdictions, is that when a writing appears on its face complete and free from ambiguity, that writing is presumed to be the entire contract and parol evidence of negotiations leading to its execution will not be considered. *Simon v. Aetna Casualty & Surety Co.,* 151 S.C. 44, 148 S.E. 648 (1929); see also, *Gantt v. Van der Hoek,* 251 S.C. 307, 162 S.E.2d 267 (1968); *John T. Stanley Co. v. Kaufman,* 170 S.C. 521, 171 S.E. 32 (1933). The presumption that the instant writing constitutes the entire agreement is buttressed by the recitation therein that it contains the complete agreement. As the South Carolina Supreme Court explained in *Carolina Mechanical Contractors, Inc. v. Yeargin Construction Co.,* 261 S.C. 1, 198 S.E.2d 224 (1973):

> [W]here in express terms it says it is the entire agreement, then it is presumed to be the sole agreement. *Sanders v. Allis Chalmers Mfg. Co.,* 237 S.C. 133, 115 S.E.2d 793 (1960).

■ Though the contract is silent on the intended effect of non-issuance of a patent or of a declaration of invalidity of any patent, we do not regard that silence as creating an ambiguity applicable here. A patent did issue, and contained the precise claims originally in the application. There has been no declaration of invalidity. For our purposes here, therefore, those questions are moot.[2]

### Royalty Requirement

■ The precise machines on which Heltra may exact royalties are unambiguously defined in the contract as those machines "covered by said patent application." It is elementary that the definition of subject matter "covered" by a patent must be found in the claims. The Supreme Court in *McClain v. Ortmayer,* 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800 (1891), stated:

> While the patentee may have been unfortunate in the language he has chosen to express his actual invention, and may have been entitled to a broader claim, we are not at liberty, without running counter to the entire current of authority in this court, to construe such claims to include more than their language fairly imports. Nothing is better settled in the law of patents than that the patentee may claim the whole or only a part of his invention, and that if he only describe and claim a part, he is presumed to have abandoned the residue to the public. The object of the patent law in requiring the patentee to "particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery," is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them.
>
> \*  \*  \*  \*  \*  \*
>
> The principle announced by this court in *Vance v. Campbell,* 1 Black 427, 17 L.Ed. 168, that, where a patentee declares upon a combination of elements which he asserts constitute the novelty of his invention, he cannot in his proofs abandon a part of such combination and maintain his claim to the rest, is applicable to a

---

**2.** Because the claims of the application and the patent are identical, the same subject matter is "covered" by either and the contract reference to an "application" is equally applicable to the patent which issued thereon. This is a case of contract interpretation in which particular terms were employed to define a product on which payments, termed "royalties," are due.

*The parties' arguments respecting various considerations of patent law, patent licenses, patent misuse, anti-trust law, and the possible effect on the contract of a future declaration of patent invalidity, are therefore irrelevant to the precise issue before us and we express no opinion thereon.*

case of this kind where a patentee has claimed more than is necessary to the successful working of his device.

That principle is unchanged. *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273, reh. denied, 409 U.S. 902, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972); *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, reh. denied, 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201 (1961); see also 35 U.S.C. § 112.[3]

▮ The patent claim language thus limits and defines the precise mechanical structure on which royalties may be exacted under the contract. The manner of operation of the machine purchased from Heltra, or of copies thereof made by Richen, is irrelevant to the issue in the case. That Richen's machine product may or may not utilize the "basic concept" of conveying yarn through a heated conduit by a flow of air is also irrelevant. Under the contract, royalties are not to be exacted on the sale of machines using Tradewell's "basic concept" but, rather, on sale of machines "covered by said patent application." The Richen machine product is not subject to royalty payments under the contract unless it incorporates, inter alia, the laminar flow and central yarn positioning of claims 1–8 or the cooling and collection means of claims 9–14. Hence the findings and conclusions of the district court, respecting a duty to pay royalties on machines incorporating a "basic concept," were in error.

### The Record

In briefs and oral argument before us, appellant proceeds as though it is established that the Richen machine product employs turbulent flow, non-centrally positioned yarn and distinct cooling and collecting means. Although appellee does challenge that view before us, it primarily argues that the contract is one of sale, involving installment payments, and that considerations of patent law, claim language and the like are irrelevant. As above indicated, however, royalties are due only upon machine products covered by the claims of the Heltra application.

▮ The record reflects direct conflict in the testimony on the operation and structure of Richen's machine product. Whether the air flow in the Richen machine is turbulent or laminar, whether yarn is positioned centrally of the Richen conduit, and whether the Richen machine incorporates the claimed cooling and collecting means or their equivalents, are critical and controlling factual issues remaining open on the record before us. Initial resolution of those fact issues is the province of the trial court. Rule 52(a), Fed.R.Civ.P. No findings on those fact issues having been made below,[4] we find it necessary to remand the case to the district court for additional findings of fact.

Accordingly, the decision of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

---

**3.** 35 U.S.C. § 112 (paragraphs 2 and 3):

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. A claim may be written in independent or dependent form, and if in dependent form, it shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim.

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

**4.** The district court's general recognition of "differences" in nozzles and heat source, in relation to its "basic concept" theory, cannot serve as a finding on the critical question of whether the Richen product was "covered by said patent application."