17698

Willis SANDERS, Respondent, v. ALLIS CHALMERS
MANUFACTURING COMPANY, Appellant

(115 S. E. (2d) 793)

*Messrs. McKay, McKay, Black & Walker,* of Columbia, with *John H. Schlosser, Esq.,* of Milwaukee, Wis., *of Counsel, for Appellant,*

*Messrs. Blatt & Fales,* of Barnwell, *for Respondent,*

August 15, 1960.

TAYLOR, Justice.

This case has been before this Court previously, see *Sanders v. Allis Chalmers Manufacturing Company,* 235 S. C. 259, 111 S. E. (2d) 201.

Plaintiff purchased from one of defendant's dealers in Barnwell County a combine and other equipment which he alleges in his complaint was incapable of performing as represented to him by one Frank E. Lee, an authorized representative and employee of Defendant. Defendant's answer denies the making of the alleged oral warranty and alleges

that a deficiency in the operation of the combine was caused or contributed to by a Ro-Master attachment for which defendant was in nowise responsible, having neither manufactured nor sold same; that there was no privity of contract between plaintiff and defendant; that plaintiff purchased the equipment from the local dealer, agreeing in writing on the nature and extent of the sole warranty made with respect to the equipment manufactured by defendant. The usual motions for directed verdict and judgment *non obstante veredicto* were made and denied, and the case was submitted to the jury who found for plaintiff. Defendant now appeals, contending principally that the written warranty superseded the parol warranty if such in fact was made at the time of the sale and purchase.

The equipment in question was purchased from Molair Farm Equipment, defendant's dealer in Barnwell, South Carolina; and it is described in the purchase order as "SP 100 All Crop Harvestor; Reel, Cycle, and Retractable Finger Auger," the total purchase price being $4,862.00. On the same page and below the listing appears the word "Warranty" in large letters; then in usual type, the following appears:

"It is understood that the Allis-Chalmers machinery is sold by the Dealer with the standard warranty of the manufacturer, set forth in full on the reverse side hereof. This warranty is the only warranty either express, implied, or statutory, upon which said machinery is sold."

And at the top of the page on the reverse side again appears the word "Warranty" in large letters, under which appears the following:

"It is understood that the Allis-Chalmers machinery is sold by the Dealer with the following standard warranty of the Manufacturer, And No Other:

"Allis-Chalmers Manufacturing Company warrants that it will repair f. o. b. its factory, or furnish without charge f. o. b its factory, a similar part to replace any material in

its machinery which within one year (six months as to crawler-type tractors and motor patrols) after the date of sale by the Dealer is proved to the satisfaction of the Company to have been defective at the time it was sold, provided that all parts claimed defective shall be returned, properly identified, to the Company's branch house having jurisdiction over the Dealer's territory, charges prepaid.

"This warranty to repair applies only to new and unused machinery, which, after shipment from the factory of the Company, has not been altered, changed, repaired or treated in any manner whatsoever, and does not extend to trade accessories, attachments, tools, or implements not manufactured by the Company, though sold or operated with the Company's machinery.

"This Warranty to Repair Is the Only Warranty Either Express, Implied, or Statutory, upon Which Said Machinery is sold; the Company's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages and warranties, statutory or otherwise, being hereby expressly waived by the Purchaser.

"No representative of the Company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract or change or extend this warranty in any manner whatsoever."

Plaintiff does not base his action upon the written warranty but upon the alleged oral warranty made by Mr. Lee, contending that the written warranty runs to the dealer and not to the purchaser. A reading of the warranty reveals that the machinery is sold by the dealer with such warranty by the manufacturer. It, briefly, provides for repair or replacement of defective parts within a year from date of such sale; further, that "no attempt to repair or promise to repair or

improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract or change or extend this warranty in any manner whatsoever." This would indicate that the warranty is to run to the purchaser through the dealer.

When a contract is reduced to writing, the parties are never presumed to have undertaken anything more than is contained in the writing itself. An express warranty, therefore, of any particular thing or quality, would seem to exclude the idea of any other. And when a written warranty exists, an express parol warranty, varying from it, ought not to be admitted. *Smith v. McCall,* 1 McCord (12 S. C. L.) 220. Where parties reduce an agreement to writing, it is to be presumed that the sole agreement of the parties and the extent of the undertaking was included therein, and parol evidence cannot be introduced to contradict it. *Wood v. Ashe,* 1 Strob. (32 S. C. L.) 407; *Smith & Furbush Machine Co. v. Johnston,* 102 S. C. 130, 86 S. E. 489.

In *Spartanburg Hotel Corporation v. Alexander Smith, Incorporated,* 231 S. C. 1, 97 S. E. (2d) 199, plaintiff purchased carpeting from the manufacturer, which carpeting was delivered through a local dealer. Prior to the time of sale, an agent of the manufacturer made an express oral warranty to the effect that the carpeting would not fade. An action was brought against the manufacturer for breach of such express oral warranty. This Court in its Opinion quoted from *Studebaker Corp. v. Nail,* 82 Ga. App. 779, 62 S. E. (2d) 198, 201, as follows:

" '* * * It is true that a warranty of personalty does not run with the article warranted. But a manufacturer may warrant his products to ultimate purchasers * * *. The consideration for such a warranty would be the purchase by the ultimate purchaser of the manufacturer's product, which is in effect a direct purchase as it would have been if the purchaser had bought from an agent of the manufacturer instead of an independent dealer or contractor. * * * There is

no obstacle preventing a manufacturer from making a contract with an ultimate consumer to guarantee an article sold to the latter, directly or indirectly, if the elements of intention to contract and consideration are present, as they are in this case. * * *' "

An examination of *Studebaker Corp. v. Nail, supra,* reveals that an express written warranty between the manufacturer became a contract with the ultimate purchaser even though the purchaser dealt only with the dealer. In *Spartanburg Hotel Corporation v. Alexander Smith, Incorporated, supra,* the transaction was between the manufacturer and the purchaser but the principles laid down in the *Georgia case* were recognized. See also *Tharp v. Allis-Chalmers Manufacturing Company,* 42 N. M. 443, 81 P. (2d) 703, 117 A. L. R. 1344; and *Allis-Chalmers Manufacturing Company v. Hawhee,* Okl., 105 P. (2d) 410.

Plaintiff takes the position that he is not bound by the warranty as expressed in the sales contract because he signed the order in blank without reading it. In *J. B. Colt Company v. Britt,* 129 S. C. 226, 123 S. E. 845, 847, we find the language of the Court as follows:

"* * * One is that no person should be permitted to found an enforceable right upon fraud; the other is that the public interests require that commercial transactions be safeguarded, negligence discouraged, and the opportunity for and temptation to perjury minimized, by attaching to a written contract a certain conclusive force or artificial sanctity as the memorial of the transaction it purports to evidence. As an outgrowth of the latter policy, we have the two familiar general rules: (1) That a written contract cannot be varied by parol or extrinsic evidence, and (2) that one cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form. 13 C. J. 370, § 249. The latter rule obviously rests upon the basic premise that it

is a duty owed by every contracting party to the other party and to the public to learn and know the contents of a written contract before he signs and delivers it. * * *"

In this case there is no allegation of fraud. The contract in question contains a warranty clause on the front page immediately above the signature of plaintiff in the same type as that employed generally throughout the contract. Plaintiff could have and is charged with the responsibility of having read same before affixing his signature thereto. The liability of the manufacturer under the express terms of the limited warranty could not be extended by Mr. Lee or the dealer beyond those of the agreement. Any other warranty is expressly excluded.

We are of opinion that the warranty runs to the purchaser; that oral representations, if any, which may have been made at the time of sale were superseded by the contract in writing and, therefore, inadmissible for the purpose of varying the terms of the written agreement; that the verdict and judgment appealed from should be set aside and judgment entered for defendant; and It Is So Ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.