**AMERICAN CAST IRON PIPE COMPA-NY, a Corporation, Plaintiff,**

v.

**McKOY–HELGERSON COMPANY, a Corporation, Defendant.**

**Civ. A. No. 3024.**

United States District Court
W. D. South Carolina,
Greenville Division.

July 27, 1963.

Ben C. Thornton, Love, Thornton, Arnold & Thomason, Greenville, S. C., for plaintiff.

Fletcher C. Mann, Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendant.

MARTIN, District Judge.

This action was originally instituted by the plaintiff to recover the purchase price of certain pipe which the plaintiff sold to the defendant. The defendant

thereafter filed a counterclaim alleging that a portion of the pipe was defective which resulted in damages in excess of the purchase price of the pipe. Jurisdiction is based on diversity of citizenship.

At the call of the case for trial, counsel for the respective parties stipulated that the amount of the alleged purchase price was owed to the plaintiff and due, thereby leaving for determination the issues presented by the counterclaim and the reply thereto, which raised the questions of whether the defendant is entitled to offset the purchase price of the defective pipe; recover the damages allegedly caused by the defective pipe under the contract and the amount of damages resulting therefrom.

At the close of the plaintiff's case, except for the proof relating to the amount of damages due,[1] the Court, after appropriate motion, and after full argument thereon, ruled that the only issue other than the question of the amount of damages sustained, was that of the contractual relationship between the parties and that this question was one for the Court. Because of the complicated testimony relating to the contract between the parties, the Court dismissed the jury and took the construction of the contracts under advisement.

The Court permitted counsel for the parties to file briefs in support of their respective positions.

During July of 1960 McKoy-Helgerson (McKoy) was awarded a contract for the construction of a research plant at Lawrenceburg, Tennessee, for the National Carbon Company. The purpose of the plant was to conduct research on the use of carbon and graphite products in the production of missile cones, heat shields and other similar type products. In connection with the construction of the plant, McKoy was required to install

several pipe lines, one of which is involved in this action. The pipeline with which we are concerned was, according to the construction plans, to serve as a connecting link between two water reservoirs. The overall length of the line was to be one and one-half miles.

Sometime during the month of July 1960, Roy Duckworth, Project Manager for McKoy, began negotiations for the purchase of the necessary twelve-inch pipe for the construction of the waterline. One of the companies contacted was American with whom the order was ultimately placed. Pursuant to his attempt to purchase the necessary pipe, Mr. Duckworth sent a "Pipe and Fittings listing" to American for price quotations on each item.[2] On Friday, July 22, 1960, Mr. Lang of American called Mr. Allen and told him about the McKoy-Helgerson job, instructed him to proceed to Greenville, pick up the quotations he had mailed to him in care of General Delivery at Greenville and call on McKoy. On Friday or Saturday Mr. Allen got the quotations, called on Mr. Duckworth with reference to the proposed purchase. By letter dated July 21, 1960,[3] American returned to McKoy the "Pipe and Fittings listing" with the price on each item set forth thereon. The relevant Portions of the cover letter are as follows:

\* \* \*

"July 21, 1960

Dear Mr. Duckworth:

ALL SALES ARE SUBJECT TO THE CONDITIONS SET FORTH ON REVERSE SIDE OF THIS SHEET

\* \* \*

We appreciate your sending us your list of Pipe and fittings required on subject job and in order to get prices returned to you by July 22nd we have taken the liberty

1. The Court refused to permit proof as to damages until the questions raised during the trial were decided.

2. Defendant's Exhibit A.

3. Plaintiff's Exhibit 1.

of inserting prices on one copy of your list.

Prices quoted are f. o. b. our foundry, North Birmingham, Alabama, with truckload freight allowed to Lawrenceburg, Tennessee, at the present published 30,000 pound rate of $7.71 per net ton. Any change in freight prior to shipment would be for your account.

Our proposal is based upon furnishing Pipe Class 150 with $2\frac{1}{45}$ design physicals. The Pipe can be furnished either coated inside and outside or coated outside with Enameline cementing inside. Fittings to be coated inside and outside.

\* \* \*

Our terms of sale are net thirty days and prices quoted to not include any Local, State or Federal Taxes.

If favored with an order for this material, shipment of full length Mechanical Joint or Fastite Pipe and some of the standard Mechanical Joint Fittings could be made in ten days from receipt of order and shipment could be made complete in thirty days from receipt of order.

Hoping to have the pleasure of serving you, we are

> Yours very truly,
> AMERICAN CAST IRON
> PIPE COMPANY
> /s/ Jim Self
> J. E. Self "

The conditions set forth on the reverse side of the first page of the letter are as follows:

## CONDITIONS

APPROVAL OF ORDERS AND CREDIT. All orders are subject to written approval and acceptance by the President, the Vice President, or the General Sales Manager or Seller. Terms are cash on surrender of shipping papers unless otherwise agreed upon, with the written approval of such officers. Seller's Credit Manager or authorized representatives.

\* \* \*

TITLE, SHIPMENT AND CLAIMS. Title to products sold hereunder shall pass upon delivery to carrier at point of shipment, irrespective of any freight allowance. Subject to other conditions hereof, Seller agrees to replace at agreed point of delivery any material found defective or which does not conform to specifications against which shipment is made. If material is defective, Seller's liability shall in no event exceed the purchase price of the material. No charges for labor or expense required to repair or replace defective material and no claims for consequential damage shall be allowed unless otherwise agreed upon in writing. Seller shall incur no liability for damages, shortages, or other cause alleged to have occurred or existed at or prior to delivery to the carrier unless Buyer shall have entered full details thereof on its receipt to the carrier. Claims by Buyer must be made promptly upon receipt of shipments and Seller given an opportunity to investigate. No claims will be allowed until approved by our inspection department.

\* \* \*

GENERAL CONDITIONS. There are no warranties, understandings or agreements, either written or oral, between Buyer and Seller relative to this sale that are not fully expressed in this contract; and all prior proposals and negotiations are merged herein.

\* \* \*

On or about July 29, 1960, Mr. Duckworth prepared a purchase order [4] dated July 29, 1960, for the necessary pipe and forwarded it to American. The purchase

4. Defendant's Exhibit B.

Order is stamped as having been received by American on August 1, 1960, at 8:00 a. m. The relevant portions of defendant's Exhibit B are as follows:

## PURCHASE ORDER

### McKOY-HELGERSON COMPANY
### BUILDERS
### GREENVILLE, S. C.

July 29, 1960

No. 13354

Order placed with   American Cast Iron Company
Birmingham, Alabama

        Job:   National Carbon Company
                 Advanced Materials Laboratory
                 Lawrenceburg, Tenn.

Invoices must be rendered in triplicate and
refer to purchase order and job numbers.

Ship to   McKoy-Helgerson Company
            c/o National Carbon Company
            Lawrenceburg, Tenn.—Att: J. C. Vaughn

Via: Your Truck     F.O.B. Jobsite    Shipping Date to Begin Aug. 8,
                                              1960

\* \* \*

### CONFIRMATION

\*NOTE:   Any material unused will be returned for our credit; however, we will pay all freight on returned material. \*Standard stock items less 25% for retesting and reprocessing. Non stock items scrap value only allowed.

Please submit the original and two (2) copies of the invoice
To:

        McKoy-Helgerson Company
        P. O. Box 341
        Lawrenceburg, Tenn.

and one (1) copy to:

        McKoy-Helgerson Company
        P. O. Box 57
        Greenville, S. C.

Order not effective until receipt of signed blue copy from vendor.

ACCEPTED    s/ C.D. Allen
By             American Cast Iron Pipe Co.

approved
        Roy M. Duckworth
              ms

\* This condition was added to the document by American

NOTE: All print underlined.

By letter [5] dated August 1, 1960, American, By Mr. Allen, acknowledged the receipt of the purchase Order and enclosed copies of American's "Manufacturing Order."[6] The Letter was marked by McKoy as having been received on August 3rd. The relevant portions of the letter and the Order are as follows:

\* \* \*

August 1, 1960

Gentlemen:

\* \* \*

We are pleased to acknowledge receipt of your above mentioned order, and are enclosing for your file and reference acknowledgment copies of our manufacturing order.

We believe order has been entered correctly; however, we would appreciate your checking and advising promptly if any revisions are necessary.

\* \* \*

Unless we receive further instructions from you, shipment has been set for the 12" pipe and fittings to arrive at the job site Monday, August 8, and then following with the 10" and other pipe. If this schedule is not satisfactory, please advise.

\* \* \*

Yours very truly,
AMERICAN CAST IRON PIPE COMPANY
s/ C. D. Allen
C. D. Allen

---

## AMERICAN CAST IRON PIPE COMPANY

### ORDER SHEET

\* \* \*      DATE 7–29–60

Sold to  McKoy-Helgerson Company
Post Office Box 57      \* \* \*
Greenville, South Carolina

Ship to  Ditto, c/o National Carbon Company
Advance Material Lab
Attention: Mr. Joe Vaughn

DESTINATION Lawrenceburg, Tenn. F.O.B. Fdy. F/A
Route
Min. C. L. Wt. 30,000      \* \* \*
Terms Net 30 days

\* \* \*

SHIPMENT: Ship so as to make delivery of 12" pipe and fittings beginning Monday, August 8th; follow then with 10" pipe and other material.

\* \* \*

5. Plaintiff's Exhibit 6.      6. Plaintiff's Exhibit 7.

## ACKNOWLEDGMENT OF ORDER

We thank you for your valued order which has been entered as above and accepted subject to the conditions on the reverse side of this sheet. All material is scheduled for manufacture and shipment exactly as listed. Any change involving cancellation of items completely or partially made will incur cancellation charges. Please check carefully and if correct, sign one copy below and return to

Yours truly,

AMERICAN CAST IRON PIPE CO.

By _____

## PURCHASER'S CONFIRMATION

We confirm our order as entered above subject to conditions on the reverse side of this sheet.

_____ (purchaser)

BY s/ Roy M. Duckworth

———◆———

\* See Change in quantity Page #2

\* Added by McKoy.

Printing is underlined.

The conditions set forth on the reverse side of page one of the order sheet are identical to the conditions set forth on the reverse side of Plaintiff's Exhibit 1 quoted above. The Order was signed by Mr. Duckworth with the notation appearing on the first page on the lower left hand corner, quoted above, and returned to American. The order sheet which Mr. Duckworth signed was marked by American as having been received on August 5th. At the time Duckworth returned the Order sheet, McKoy's purchase order, Defendant's Exhibit B, had not been returned, but it was subsequently returned on August 15th.[7] Delivery of the pipe was originally scheduled for August 8th but pursuant to a telephone conversation sometime between July 29th and August 4th the delivery was re-scheduled. The pipe was shipped from American's plant on August 4th and arrived at the jobsite on August 5th.

The following testimony by Mr. C. D. Allen was introduced by way of deposition:

\* \* \*

"Q. So then This order sheet was in effect prepared by you to go to your Shipping Department to begin the shipment of this merchandise?

"A. Yes, sir.

"Q. And you sent a copy to McKoy-Helgerson?

"A. Yes, sir.

"Q. And it wasn't a condition prerequisite to your shipment that you have this sheet in your possession?

"A. From McKoy-Helgerson?

"Q. Yes.

"A. He gave me a verbal order. That was really the basis of making the sale.

"Q. But if you did not receive this order sheet from McKoy Hel-

7. The following condition was added to McKoy's purchase order after it was received by American: "Standard stock items less 25% for retesting and reprocessing non stock items scrap value only allowed." See Defendant's Exhibit B above. The copy of the order which was returned to McKoy on or about August 15th contained this added condition.

gerson until August 5, your shipment had already gone?

"A. That's right."

On August 15, 1960, two truck loads of pipe were shipped to McKoy, arriving at the jobsite on August 16, 1960. The eleven or twelve pieces [8] of defective pipe were in these two truck loads. When the pipe was delivered at the jobsite, it was stockpiled in the area of the yard of the jobsite. The pipe was unloaded with a winch truck. This type of truck has a frame constructed on the rear of the truck in the shape of an inverted V. At the top is a pulley. A cable is put through the pulley and hangs down below the frame. To move an object, the cable is connected around the object to be moved and then pulled up so that the object hangs free; the truck can then be driven to the place where the object is to be placed. The pipe was also moved from the stockpile to the pipeline with the winch truck. It was placed in the ditch by a motor crane.

All the defective pipe was found to be in the portion of the line which was first laid.

The pipe used in constructing the water line was described as "12-inch cast iron enamel-lined Fastite, Class 150." The 12-inch is the diameter of the inside of the pipe; Fastite describes the type of joint; [9] the term Class 150 describes the strength of the pipe.

To test the water line, the line was sealed off, filled with water and pressure applied. The test called for pressure of 175 pounds per square inch. In testing the sections of the line which contained the defective pipe, it was not possible to obtain the necessary amount of pressure. An investigation revealed that various pieces were leaking. When these defective pieces were removed and inspected, it was determined that they contained small cracks on the spigot ends, which extended horizontally from the very end of the pipe back toward the bell end.

The two truck loads which contained the defective pipe were delivered by Colonial Fast Freight Lines, Inc.

The water line was laid under the supervision of two different foremen, Ray Sherron and Richard Thames. Mr. Thames replaced Mr. Sherron on October 5, 1960. At that time, approximately fifty (50%) percent of the line had been constructed and one or two pieces of defective pipe had been discovered. Ten breaks were discovered after Mr. Thames came on the job. At least four of the defective pieces were laid under the supervision of Mr. Thames.

The facts are not in dispute, it is only the conclusions to be drawn therefrom which are contested by the parties. McKoy contends that the contract between the parties consists of the acceptance of their purchase order, Defendant's Exhibit B, but admits that there is at least one other inference which can be drawn from the facts and that the action should be submitted to a jury for its determination of the contract. In Substance, McKoy contends that the jury should determine when, if ever, there was a meeting of the minds requisite to the formulation of a contract and what subsequent damages the defendant incurred through the defects in the pipe which was the subject of such contract.

In order to determine the contractual relationship between the parties, it is necessary to construe the several writings together. Certainly, by the time the pipe in question arrived at the jobsite, the terms of the contract were established but they are not to be found in any one document. The only conflict in the documents is the payment of the freight charge, but this question is not before the Court and does not affect the question presented.

---

8. At least seven of the defective pieces were manufactured in Cupula 7 at the factory.

9. The joint consists of a bell and spigot pipe with a preformed gasket; the spigot end is prepared and slides or is jacked into the bell.

An analysis of American's letter, dated July 21, 1960, (Plaintiff's Exhibit 1) McKoy's Purchase Order (Defendant's Exhibit B) American's letter dated August 1, 1960, (Plaintiff's Exhibit 6) and American's Order Sheet (Plaintiff's Exhibit 7) leaves no doubt that the conditions set forth on the reverse side of Plaintiff's Exhibit 1 and Plaintiff's Exhibit 7 were a part of the contract. There is no rejection anywhere of these terms and there is no conflict with them. If the Court submitted this action to a jury, it would be necessary to instruct them that these conditions were a part of the contract.

Under this construction the only remaining question is the effect of the conditions upon the action here. The Condition entitled, TITLE, SHIPMENT AND CLAIMS, purports to limit the liability of the seller for defective material to the replacement of such defective material. The effect of a written warranty was recently considered by the South Carolina Supreme Court in the case of Sanders v. Allis Chalmers Manufacturing Company, 237 S.C. 133, 115 S.E.2d 793 (1960). Under the Sanders case and the cases cited therein, effect must be given to the written warranty which was a part of the contract. Under the written warranty, McKoy is limited to the purchase price of the defective pipe, approximately $680.00. Considering the evidence in the most favorable light toward McKoy, the only reasonable inference which could be drawn by reasonable men is that the conditions set forth by Plaintiff's Exhibits 1 and 7 were terms of the contract; that these conditions limit the liability of American for defective pipe to the purchase. price thereof.

The plaintiff's motion for a dismissal of the counterclaim is hereby granted.

The Plaintiff shall submit to the Court a proposed Order for Judgment in favor of the plaintiff on the Complaint within ten days.

And it is so ordered.